ORAMEL BOND v. ZERAH B. CLARK.

*Book Account. Auditor's Report. Payment.*

If an auditor report the testimony, instead of finding the fact, and a party goes to hearing upon the report without exception thereto or motion to recommit, he thereby submits the issue of fact to the court, and cannot assign error in respect thereto.

In mutual accounts, when the parties thereto agree that certain items shall go in liquidation of certain other items, and provide for no further act to be done in respect thereto, the law makes the application *at once.*

BOOK ACCOUNT. The 5th item of the plaintiff's account was for his son's work for the defendant from April 9th to August 6th, 1872, at $17.50 per month, $68.58. As to this item, the auditor reported the following facts :

" George Bond, the plaintiff's minor son, early in April, 1872, by the consent and approbation of his father, applied to the defendant to let himself to him to labor on the defendant's farm the then coming season. The evidence establishes the fact that he let himself to the defendant for seven months, or longer if wanted, at $17.50 a month. I do not find from the preponderance of the evidence that any condition was attached to, or formed a part of, said letting. Said George began to labor for the defendant the next day after contracting to labor as aforesaid, and labored for him until the 6th of August, as above stated, when, without defendant's consent, and without sufficiently justifiable cause, he left the defendant's employ, and has not labored for him since ; and I find from the evidence that the damages to the defendant in consequence of the plaintiff's son leaving him at the time he did, are equal to the sum claimed by the plaintiff for his son's labor."

The five first items of the defendant's account were for sawing and planing, and were allowed by . the auditor ; the auditor reporting that they were not seriously contested. At the plaintiff's request, the auditor was permitted to make an addition to his report after it was filed, and reported the following :

" In relation to the first five items of the defendant's account, the plaintiff testified as follows : ' I think I had a talk with Clark at the mill about the planing, and I told him if I did not pay him it could be turned when he and I settled for George's work. This was after the boy had got through work for him. * * * I

was paying out a good deal of money, and was short, and I proposed to let it go on account, and he assented to it.' The defendant testified : ' Bond was owing me the bill for sawing and planing the latter part of the winter of 1871–2. I spoke to him about paying, and he said he would get the money as soon as he could. Soon after George began to work, Bond came into the shop and began to dun himself, and I said to him, it is no matter, Mr. Bond, it can turn on George's work. Bond says, I shall be very glad to do so, as I am very short for money. George was to work for me at this time.' The plaintiff claims now that these items shall be paid by George's labor, and are paid for in that way."

The court, at the December term, 1873, Barrett, J., presiding, disallowed the plaintiff's charge for his son's work ; also, the five first items of the defendant's account, as they were paid by the son's work, as shown by the defendant's testimony as reported ; and rendered judgment on the report for the plaintiff for $8. The defendant excepted to the disallowance of said items of his account.

*Geo. Tenney*, for the defendant.

The court erred in holding that the first five items of defendant's account were paid by the son's work. It was a question of fact, and not of law. The auditor found the fact, and it was not for the court to revise the auditor's finding. *Cottrell* v. *Vandeusen*, 22 Vt. 511 ; *Estey et al.* v. *Read*, 29 Vt. 278 ; *Smith & Durkee* v. *Woodworth*, 43 Vt. 39 ; *Wood, admr.* v. *Barry*, 2 Vt. 369. If the court below can revise facts found by the auditor, this court can also revise them ; and from the testimony of the parties, there was, clearly, no payment. But how did the plaintiff understand this agreement ? Precisely as we claim. He says : " I think I had talk with Clark at the mill about the planing, and I told him it could turn when he and I settled for George's work. This was after the boy had got through work for him. I was paying out a good deal of money and was short, and I proposed to let it go on account, and he assented to it." *Stone* v. *Pulsipher et al.* 16 Vt. 428 ; *Brooks et als.* v. *Jewell*, 14 Vt. 470 ; *Jewett, admr.* v. *Winship et als.* 42 Vt. 204 ; *Strong* v. *McConnell*, 10 Vt. 231 ; *Chellis* v. *Woods*, 11 Vt. 466.

*S. M. & S. E. Pingree*, for the plaintiff.

The opinion of the court was delivered by

Ross, J. Items 6, 7, and 8 of the account of the defendant, are not insisted upon in this court. This leaves for consideration, whether the county court properly held that the first five items of the defendant's account had been adjusted between the parties as a payment towards the son's work. It seems there was no contest as to the amount or correctness of these charges. The auditor allowed them in his original report. His report, finding that the damages occasioned to the defendant by the plaintiff's son having left before completing his term of service, was equal to all he earned in over four months' service, appears to have been a surprise to both parties. The plaintiff had not, till made aware of this finding, insisted that these five items had been paid by his son's labor. The auditor does not in terms find that they had or had not been so paid ; but has reported the testimony bearing upon this issue in the case, and said that upon this testimony the plaintiff insisted these items were paid. It would probably have been more in accordance with regular proceedings in book-account actions, if the county court had recommitted the report to have the auditor find the fact one way or the other. But as neither party asked to have the report recommitted to have the auditor find how the fact was, we do not think the defendant can now insist it was error for the county court to weigh the evidence detailed by the auditor, determine how the fact was, and render judgment accordingly. By allowing the report of the auditor to stand without exception, and by hearing the case on the report as it was, the defendant virtually submitted that issue to the determination of the court. The evidence detailed by the auditor tended to establish the fact of the payment of these items as found by the county court. This court sits to revise errors of law, and not errors of fact passed upon by the county court. If the county court did determine this fact erroneously, this court can afford him no aid. We are not satisfied the county court committed any error in finding the fact as it did. The defendant's own testimony, in substance, is, that he agreed with the plaintiff to call

these items paid by the son's labor. The cases cited by the counsel for the defendant, in which this court held that items delivered and charged by one party on book, under a mutual expectation and agreement that they were to be applied in payment of a note or notes which the other party held, but which never were in fact applied, were not an executed payment on the note, and barred by the recovery of the full amount of the note, are not quite applicable to this case. The note evidenced a distinct and separate indebtedness. The questions in those cases were, whether the items were so delivered that they never created an indebtedness, or right to charge on book. In the case at bar, the items were charged in mutual account, and the question before the county court was, whether these five items had by the parties been applied in liquidation of the item for the son's labor. There was no separate instrument evidencing the indebtedness for the son's labor, on which application was to be made by endorsement. When the parties agreed to so apply these items, no further or other act remained to be done, to make the application immediate. The parties could do nothing further to evidence the application, unless it was to state the account as regards these items. But that would change it from book account to an account stated. When, in a mutual account or book account, the parties agree that certain items shall go in liquidation of certain other items, and provide for no further act to be done in regard thereto, the law makes the application at once. We think, when the defendant said, " It [these items] can turn on George's work," and the plaintiff replied, " I shall be very glad to do so, for I am short of money," the county court were justified in finding that the application of these items was then made in liquidation of the sum due for the son's work.

Judgment affirmed.